IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEROME MARKAY,

        Petitioner,               No. CIV S-02-0152 GEB GGH P

     vs.

L.E. BROWN, et al.,

        Respondents.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the original petition filed December 4, 2001.  Petitioner challenges his 1996 conviction for two counts of battery by a prisoner on a non-prisoner (Cal. Penal Code § 4501.5).  Petitioner was sentenced to prison for 52 years to life pursuant to the Three Strikes law.

        The petition raises three claims: 1) the trial court erred in finding that petitioner waived his right to attend the resentencing hearing; 2) the trial court abused its discretion in resentencing petitioner to 52 years to life; 3) the sentence constitutes cruel and unusual punishment.

\\\\\

1

1    After carefully considering the record, the court recommends that the petition be

2 denied.

3 II.  Procedural Background

4    Petitioner filed another habeas corpus action in this court challenging the validity

5 of his 1996 conviction for two counts of battery by a prisoner on a non-prisoner, CIV S-99-1479

6 GEB GGH P.  This action was denied on the merits on January 31, 2002.

7    Petitioner filed the instant action on December 4, 2001.  On March 17, 2003, the

8 court dismissed the instant action as successive of CIV S-99-1479.  On February 7, 2005, the

9 Ninth Circuit vacated this judgment and remanded the matter with instructions to construe the

10 original petition filed in this action as a motion to amend the prior petition.

11    On March 24, 2005, the court ordered respondent to file an answer to the instant

12 petition.  On May 26, 2005, respondent filed an answer.  On June 16, 2005, petitioner filed a

13 traverse.

14 II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

15    The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

16 petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

17 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

18 AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

19 standards of review to be used by a federal habeas court in assessing a state court's adjudication

20 of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

21 (9th Cir. 1997).

22    In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

23 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

24 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

25 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

26 "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

1   to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

2   Court on a point of law, or (2) if the state court case is materially indistinguishable from a

3   Supreme Court case, i.e., on point factually, yet the legal result is opposite.

4          "Unreasonable application" of established law, on the other hand, applies to

5   mixed questions of law and fact, that is, the application of law to fact where there are no factually

6   on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

7   Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

8   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

9   deference is not blindly automatic, "the most important point is that an *unreasonable* application

10  of federal law is different from an incorrect application of law....[A] federal habeas court may not

11  issue the writ simply because that court concludes in its independent judgment that the relevant

12  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

13  that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

14  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

15  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

16  authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

17         The state courts need not have cited to federal authority, or even have indicated

18  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

19  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

20  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

21  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

22  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

23  established Supreme Court authority reviewed must be a pronouncement on constitutional

24  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

25  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

26  \\\\\

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned decision denying petitioner's claims. Respondent's Supplemental Exhibits 1, 5. Accordingly, the court considers whether denial of the claims by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

III. Background

Petitioner's claims all concern his resentencing. The background to these claims, which is not disputed, is contained in the opinion of the California Court of Appeal:

B. The Charges and Trial

Defendant was charged with three counts of battery by a prisoner on a non-prisoner (§ 4501.5)–count one was the battery on Officer Potter; count two concerned Sergeant Garcia; and count three involved Officer Sakauye. It was also alleged that defendant had two prior prison strikes (voluntary manslaughter and robbery) and two prior prison terms. A jury found defendant not guilty on count one, but guilty on counts two and three, after which defendant admitted the strikes and the two prior prison terms. The trial court sentenced defendant to two consecutive 25-year-to-life terms for counts two and three pursuant to the Three Strikes Law, plus two years for the prior prison term.

C. Defendant's Appeal

Defendant appealed to this court. We rendered an opinion finding, inter alia, that the trial court had misunderstood its discretion with respect to the consecutive sentencing because it had mistakenly believed that section 667, subdivision (e)(2)(B) of the Three Strikes law required consecutive sentences. We affirmed the convictions, however, and remanded for resentencing in light of People v.

4

1   Hendrix (1997) 16 Cal.4th 508, 514, People v. Newsome (1997) 57 Cal.App.4th
    902, 913, and People v. Deloza (1998) 18 Cal.4th 585, 600.

2

3   D.  Resentencing

4   At the resentencing hearing, the trial court announced that defendant was not
    present.  The court asked her clerk to "state for the record" the clerk's
    conversation with representatives from Folsom Prison.  The clerk reported that
5   prison officials had told her "defendant refused to get dressed and refused to come
    down to the courthouse today for his hearing due to the fact that he has a deep
6   hatred for Sergeant Garcia and would not ride with Sergeant Garcia anywhere."

7   The court proceeded to "make[] a finding that [defendant] [did] not have a right to
    select who the transport officer [would] be to bring him to court, and by refusing
8   to come to court, he [had] waived his right to be present at this Romero [footnote
    3] hearing."  Defense counsel, who was present, made no objection to the court's

9
        [Footnote 3: People v. Romero (1996) 13 Cal.4th 497, hereinafter
10       sometimes referred to as "Romero."]

11  finding.

12  The court announced that it had considered the declaration of Steve Mason, a
    psychiatric social worker employed by the Department of Corrections, which
13  declaration the defense had provided to the court.  That declaration noted that
    defendant had been diagnosed with bipolar disorder (which was formerly known
14  as manic depression), was resistant to treatment, had "significant anger control
    and behavioral problems which are an outgrowth of his personality disorder," and
15  was responding well to medications at present.  The defense also presented its
    position that given defendant's psychiatric history and personality, the sentence
16  would be cruel and unusual punishment.

17  After stating that the court had "read and considered the directive of the Third
    District Court of Appeal" and "that it is now aware of its discretion under the
18  Romero decision and is exercising that discretion," the court reaffirmed the
    original sentence.

19

20  Respondent's Supplemental Lodged Document no. 4, pp. 3-5.

21  IV.  Discussion

22      A.  Attendance at Re-Sentencing

23      Petitioner argues that he was denied his right to attend the resentencing hearing.

24  The Supreme Court has recognized that "the right to personal presence at all critical stages of the

25  trial...[is a] fundamental right [] of each criminal defendant."  Rushen v. Spain, 464 U.S. 114,

26  117, 104 S. Ct. 453 (1983).  Criminal defendants have a constitutional right to be present during

5

sentencing.  Brewer v. Raines, 670 F.2d 117, 118-19 (9th Cir. 1982).  A defendant may waive his

right to be present at a critical stage of the proceedings "provided such waiver is voluntary,

knowing, and intelligent."  Campbell v. Wood, 18 F.3d 662, 671-72 (9th Cir. 1994).

The right to be present at all critical stages of trial is subject to harmless error

analysis "'unless the deprivation, by its very nature, cannot be harmless.'"  Campbell v. Rice, 408

F.3d 1166, 1172 (9th Cir. 2005)(en banc) (quoting Rushden v. Spain, 464 U.S. 114, 117 n. 2, 104

S.Ct. 453 (1983)).[1]  The vast majority of cases will be subject to harmless error analysis.  See

e.g., United States v. Gagnon, 470 U.S. 522, 527, 105 S. Ct. 1482 (1985).

The court has struggled with application of Hays v. Arave, 977 F.2d 475 (9th Cir.

1992).  This case held that *in absentia* sentencing was structural error.  However, Hays was

overruled by Rice v. Wood, 77 F.3d 1138, 1144 (n.8) (9th Circuit 1996 (en banc), "to the extent

inconsistent with" Rice.  Since Rice involved a different issue, absence during the announcement

of a death sentence, it is difficult to analyze the analytical inconsistencies of Rice with Hays.

Moreover, Hays was not an AEDPA case, and the undersigned is unaware of any Supreme Court

case establishing that the absence of a defendant from sentencing, including allocution, is

structural error.  The undersigned will follow Campbell v. Rice which generically held that

absence from a critical stage of the proceedings is governed by a harmless error standard.

The California Court of Appeal found that petitioner waived his right to attend the

resentencing hearing and that any error was harmless:

> Defendant contends that the court deprived him of due process "[b]y failing to
> require [his] presence at [the] time sentence was imposed."
>
> In fact, it was not the court that failed to require his presence, but the defendant
> who refused to appear.  At resentencing, the trial court announced that defendant
> was not present, and asked the courtroom clerk to summarize "for the record" the

---

[1]  Although the application of the harmless error rule announced by Campbell was called
into question by Bradley v. Henry, 428 F.3d 811 (9th Cir. 2005), Campbell is an en banc decision
and may not be overturned by a subsequent panel.  Moreover, nothing in the way of Supreme
Court jurisprudence in the interim between Campbell and Bradley, or even up to the present time,
would have abrogated the en banc decision.

clerk's conversation with representatives from Folsom Prison, wherein she
reported that prison officials told her that defendant "refused to get dressed and
refused to come down to the courthouse today for his hearing."  The court did not
request the clerk to take an oath before making her statement, however, and
neither the district attorney nor the defense attorney examined the clerk.

*****

We therefore conclude that defendant voluntarily absented himself from the
sentencing hearing in this case by refusing to be transported to the hearing.  To
hold otherwise would be to permit a defendant to premise error on a conscious
and deliberate refusal to cooperate.  This is not a case where a court has
erroneously excused a defendant from trial or erroneously approved a request not
to attend.  Instead, it involves a physical refusal to cooperate: a knowing forfeiture
of his right to attend.

Defendant nonetheless contends that "[defendant's] alleged conduct in response to
the correctional staff, as reported by the court clerk[,] does not meet the normal
requirements of a waiver."  But waiver is the intentional relinquishment or
abandonment of a known right.  (Cowan v. Superior Court (1996) 14 Cal.4th 397,
371.)  Refusing to attend a hearing is an intentional relinquishment of a known
right.

*****

Here, defendant's disruptive behavior on the way to the court made it impossible
to secure defendant's attendance.  And to require a continuance each time the
defendant refused to attend a session would place control of the scheduling of the
proceedings in the defendant's, rather than the court's, hands.  Given defendant's
recalcitrant refusal to attend the hearing based on his disdain for the transporting
officer, and because the offenses, for which he was to be sentenced, involved
assaults on prison officers, like People v. Price, supra, "the trial court could
reasonably anticipate that any effort to bring defendant to the courtroom against
his will would endanger the safety of the transporting officers and of persons in
the courtroom.  A trial court need not wait until actual violence or physical
disruption occurs within the four walls of the courtroom in order to find a
disruption within the meaning of section 1043."  (People v. Price, supra, 1 Cal.4th
at p. 406.)

Defendant also argues that "by accepting the unsworn hearsay statements of court
staff, the trial court failed to protect [his] due process rights to be present and be
heard at the time sentence was imposed."

However, by not objecting to the clerk's statement on hearsay or other grounds,
defense counsel waived any objection.  (People v. Medina (1995) 11 Cal.4th 694,
739.)  People v. Medina, supra, 11 Cal.4th at page 739, is on point.  There, the
defendant complained that the court relied on third-hand information to conclude
that he had waived his presence voluntarily or that he would be disruptive.  He
claimed that the court should have brought him to court despite his assertions to
jail personnel and the court bailiff that he would not behave.  The Supreme Court
rejected the argument: "The court properly relied on jail personnel to relay the

1    pertinent information to the court bailiff.  No objection was made to this
     procedure and, in any event, we find it unobjectionable." (Id.)

2

3    *****

4    In any event, any statutory error resulting from defendant's refusal to attend the
     sentencing hearing was harmless.  A violation of the statutory right to attend a
5    hearing will justify reversal only if it is reasonably probable that a result more
     favorable to the appealing party would have been reached in the absence of the
6    error.  (People v. Jackson, supra, 13 Cal.4th at p. 1211.)  Defendant cannot
     demonstrate that his absence prejudiced his case or denied him a fair sentencing.
7    (People v. Howard, supra, 47 Cal.App.4th at p. 1539.)  The record contains no
     indication the court would have sentenced defendant differently had he been
8    present; therefore, the error appears to be harmless.  (See People v. Robertson
     (1989) 48 Cal.3d 18, 62, citing Chapman v. California (1967) 386 U.S. 18, 24 [17
9    L.Ed.2d 705, 710-711].)

10   Respondent's Supplemental Lodged Document no. 4, pp. 11-18.

11          In the petition and traverse, petitioner appears to argue that he refused to attend

12   the resentencing hearing because the transportation officer, Officer Garcia, was one of the

13   officers involved in the incident that led to his conviction.  According to the California Court of

14   Appeal, petitioner refused to be transported by Officer Garcia because he hated him.  Petitioner's

15   personal dislike of Officer Garcia did not constitute a justifiable reason for his refusal to attend

16   the hearing.

17          Although petitioner was convicted of assaulting the officers, petitioner might have

18   argued that he refused to be transported by Officer Garcia because he was afraid of him.

19   Petitioner might have argued that his waiver of the right to attend his resentencing hearing was

20   not voluntary because he did not attend the hearing out of fear of Officer Garcia.  However,

21   petitioner does not make this argument.

22          In the traverse, petitioner "reasserts his claim the Trial Court abused its discretion

23   when it resentenced him to the original sentence when he was not present at his resentencing."

24   Traverse at 2.  However, the standard is whether the trial court, and appellate court errantly and

25   AEDPA "unreasonably" applied established Supreme Court authority in finding a waiver.  In the

26   \\\\\

1  absence of such a showing, the undersigned cannot fault the waiver analysis of the appellate

2  court.

3          Even if the waiver analysis is AEDPA incorrect, as previously shown, the error

4  here is not structural, but subject to a harmless error analysis.  When a non-structural error of

5  federal constitutional magnitude occurs in a state trial court, and the state court has applied the

6  standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967), or its state law equivalent,

7  finding the error to have been harmless beyond a reasonable doubt, federal habeas relief is

8  available only if the petitioner can demonstrate that the application of Chapman was objectively

9  unreasonable within the meaning of 28 U.S.C. § 2254(d), and that petitioner suffered prejudice

10 under Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993).  Inthavong v. LaMarque, 420

11 F.3d 1055, 1059 (9th Cir. 2005).  Under Brecht, errors are harmless if they do not have a

12 "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S.

13 at 637, 113 S. Ct. 1710.  The court may address either the Brecht or AEDPA test in any order.

14 Inthavong, 420 F.3d at 1061.

15          Assuming that petitioner's right to attend his resentencing hearing was violated,

16 nothing in the record suggests that petitioner's absence from this proceeding had a substantial

17 and injurious effect on the outcome of the proceedings.  The trial court seemingly focused upon

18 petitioner's bad record.  The court was also aware of petitioner's previously diagnosed mental

19 problems.  Having petitioner in front of him, making a plea for leniency, given petitioner's

20 record, was not likely to have changed the judge's mind, or anyone for that matter, with respect

21 to consecutive sentencing.  The record does not demonstrate that petitioner would have received

22 a lighter sentence had he personally attended the hearing.  Accordingly, the court finds that any

23 error in petitioner's absence from his resentencing was harmless.

24          The denial of this claim by the California Court of Appeal was not an

25 unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

26 should be denied.

1        B.  Consecutive Sentences

2            Petitioner argues that the trial court abused its discretion when it resentenced him

3    to two consecutive life sentences.  In particular, petitioner argues that the trial court did not

4    properly consider his psychiatric history because it relied on a declaration by a social worker that

5    was almost one year old.  Therefore, petitioner argues, the trial court relied on facts that were

6    stale in sentencing him to consecutive sentences.

7            Petitioner's claim that the trial court abused its discretion in sentencing him to

8    consecutive sentences is not cognizable on federal habeas.  Cacoperdo v. Demosthenes, 37 F.3d

9    504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or

10   consecutively is a matter of state criminal procedure and is not within the purview of federal

11   habeas corpus."); Miller v. Vasquez, 868 F.2d 1116, 1118-1119 (9th Cir. 1989) (holding that

12   "[w]hether assault with a deadly weapon qualifies as a 'serious felony' under California's

13   sentence enhancement provisions is a question of state sentencing law" which is not cognizable

14   on federal habeas).

15           The denial of this claim by the California Court of Appeal was not an

16   unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

17   should be denied.

18       C.  Eighth Amendment

19           Petitioner argues that his sentence of 52 years to life violates the Eighth

20   Amendment.  In Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003) the Supreme Court

21   found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant

22   clearly established law amendable to the 'contrary to' or 'unreasonable application of' framework

23   is the gross disproportionality principle, the precise contours of which are unclear and applicable

24   only in the 'exceedingly rare' and 'extreme' case."  Lockyer, 538 U.S. at 73, 123 S. Ct. 1166

25   (citing Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680 (1991); Solem v. Helm, 463

26   U.S. 277, 290, 103 S.Ct. 3001 (1983); and Rummel v. Estelle, 445 U.S. 263 U.S. 272, 100 S. Ct.

1    1133 (1980)).  The Supreme Court in <u>Andrade</u> concluded that two consecutive twenty-five years

2    to life sentences with the possibility of parole, imposed under California's Three Strikes law

3    following two petty theft convictions with priors, did not amount to cruel and unusual

4    punishment.  <u>Id.</u> at 77; <u>see also</u> <u>Ewing v. California</u>, 538 U.S. 11, 123 S. Ct. 1179 (2003)

5    (holding that a sentence of twenty-five years to life imposed for felony grand theft under

6    California's Three Strikes law did not violate the Eighth Amendment).

7            Pursuant to <u>Lockyer</u>, the court finds that petitioner's sentence of 52 years to life

8    for two counts of battery by a prisoner on a non-prisoner with prior convictions for voluntary

9    manslaughter and robbery does not fall within the type of "exceedingly rare" circumstance that

10   would support a conclusion that his sentence violates the Eighth Amendment.  The denial of this

11   claim by the California Court of Appeal was not an unreasonable application of clearly

12   established Supreme Court authority.  Accordingly, this claim should be denied.

13           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

14   a writ of habeas corpus be denied.

15           These findings and recommendations are submitted to the United States District

16   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17   days after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20   shall be served and filed within ten days after service of the objections.  The parties are advised

21   that failure to file objections within the specified time may waive the right to appeal the District

22   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

23   DATED:  02/27/08                              /s/ Gregory G. Hollows

24                                                   _____
                                                     UNITED STATES MAGISTRATE JUDGE

25   markay.157

26